Good morning, Counsel. Good morning, Your Honor. Good morning, Your Honors. Paul Pata on behalf of the appellant, Annealem Gebreslasie. I'd like to reserve seven minutes for rebuttal, which will be handled by my co-counsel, Mr. Wayne Price. All right. Thank you. Thank you. May it please the Court. Your Honors, in this appeal, my client is challenging what amounts to basically the government putting its thumb on the scales of justice. Depriving asylees like my client, Mr. Gebreslasie, of the right to judicial review. When you boil it all down, the government's position in this case is that no federal court, not this court, not a lower federal court, has the power to review the government's refusal to put my client into removal proceedings. Now, when you stop and think about it, there are two legal points that are really important that I think need to be set forth at the beginning. Number one, the agency's own regulations, 8 CFR 209, provide that a person granted asylum can seek adjustment of status one year after having been granted asylum. My client was granted asylum in 2002. In the last 17 years, he's been filing requests to adjust his status. Those requests have been denied. The agency's own regulation, 8 CFR 209.2 F, provides the following. The agency shall, quote, notify the applicant seeking adjustment in writing of the decision on his or her application, to which there is no right of appeal of a denial. But USCIS will notify the applicant of the right to renew the request in removal proceedings. In other words, the agency's own regulations contemplate that the asylee will have the right to challenge that decision when he or she is in removal proceedings. What's happening in this case is that the government is essentially creating an entire class of people who have been granted asylum, who have the right under the agency's regulations to seek adjustment of status. The agency is denying their applications, but then refusing to put them into removal proceedings, where they would have the right to challenge that decision before an immigration judge. But counsel, what authority gives us jurisdiction to tell the agency to commence removal proceedings? Well, and I believe this is an appeal that has issues of first impression in this court, but the court has sort of touched on issues that affect this decision previously. In the case of Kwai Fun Wong v. United States, which the government itself acknowledges on page 13 of its brief, this court specifically found that 1252G, 8 U.S.C. 1252G, which was the statute that the lower court relied upon to find that it lacked jurisdiction, this court held that 1252G does not preclude review of decisions made prior to any decision to commence proceedings. So, in other words, all of the cases that the government's relied upon in this appeal are cases where the alien is in removal proceedings and is challenging the decision of whether he or she should have been placed into proceedings, or the timing of when those proceedings occurred. That's not what we have here. We have someone who's saying, please put me to removal proceedings. And I'm curious if there is any case in all of the jurisprudence in the United States that says a court has authority to order the agency to place. Well, in two other sister circuits, the Third Circuit and the Sixth Circuit, both decisions were cited in our briefs, and I find it very telling that the government does not even address them in its opposition or answering brief. But in the Third Circuit, in Pino v. Gonzalez, and then in the Sixth Circuit, a decision authored by the chief judge of that court, Judge Keith, which he characterized as leading to a perverse result, the court found that, yes, the court has jurisdiction under the APA arbitrary and capricious standard to evaluate why is the agency What is the final agency action here? Well, the decision is to not put him into removal proceedings is a decision. Is there a written document to that? They issued a denial, and they said you have the right to challenge this in removal proceedings, the denial of his adjustment of status application. And the agency, as they're required to do, advised my client that you can you cannot appeal this decision, but you have a right to challenge it in removal proceedings, but they're not putting him in removal proceedings. And so essentially, on the continuum They haven't put him in yet. Yet, yet. I don't understand. The decision you want reviewed is a decision not to commence removal proceedings, but there's no decision to that effect. He just isn't in removal proceedings. And when will he ever have a right to adjust status then? And that's what Judge Keith wrestled with. And what he found was that what's the litmus test? Is it 10 years? Is it 15 years? Counsel, what's the name of the case you're citing? Hosseini versus Johnson. Okay. I've got it. And then there's another case that that the Sixth Circuit cited to the Third Circuit in Pino versus Gonzalez. But that I thought Hosseini was a denial of an application to adjust status, not a challenge to the failure of the agency to place the person in removal proceedings. My understanding, Your Honor, was that that decision dealt with the fact that the agency was not putting the client into removal proceedings, but was continually denying his applications. And Could you point me to the specific language in the Hosseini case that you are relying upon for the proposition that we have authority to order the court to commence removal proceedings? Let me just say, getting to answer your question, Your Honor, in Pino versus Gonzalez, the Third Circuit held that the immigration authority's denial of an application of adjustment was final within the meaning of the APA because no removal proceedings were pending. And then the Third Circuit rejected the same arguments presented here. The court reasoned that, quote, if the agency does not seek to deport Pino, there can never be an appeal within the agency by which a higher level of administrative authority can be invoked to review the legal determination made by the agency. Correct. But I didn't see any language in either of those cases giving us jurisdiction to order the agency to commence removal proceedings. That's why I asked you the question. Well, in our complaint before, below the lower court, we sued based on the APA arbitrary and capricious standard. And so what we're saying is that it's arbitrary and capricious that the agency is not putting him and making a decision, affirmative decision, not to put him into the court. It has a certain Alice in Wonderland quality to it. It does, frankly. But here's the thing. The regulations provide he has a right to seek adjustment of status. He's trying to do that. They have a right to deny it. Well, there are. When does he have a right to seek adjustment of status? CFR 209. No, I understand that. In removal proceedings. Yes, he has a right to renew that request in removal proceedings to say the agency's denial of my application is unfair. And that's what Judge Keith said as I read that decision. I still don't see the language. I respectfully apologize, Your Honor. Here's what we have in our brief. The quote is, the Sixth Circuit rejected the government's argument that, quote, because the agency can elect to institute removal proceedings against Hosseini at some future time, the agency's denial of his application is tentative, not final. Right. But that doesn't tell us that we have authority to compel the agency to commence removal proceedings. Well, but the court found that the court had the right to review under the arbitrary and capricious standard the decision to not put him into removal proceedings. And that's how I read the Sixth Circuit decision. They were reviewing the denial of the application for adjustment of status, which is the same thing we have here. Well, here's the language from the Sixth Circuit. Quote, we are also not persuaded by the government's argument that Hosseini can merely reapply for admission as often as he wants. This approach suffers from the same flaw, quote, there can never be an appeal within the agency by which any higher level of administrative authority can be evoked to review the legal determination. But they said that all in the context of determining that this was a final decision. Not that it gave them authority to compel the agency to act, but that it became final because in the Sixth Circuit's mind, any repeat was futile. But that doesn't give us the answer to the question of whether or not we have authority to require the agency to commence removal proceedings. But Hosseini was in the exact situation that my client is in. He had applications of adjustment that were being denied. He challenged that. And the Sixth Circuit ultimately concluded that the decision not to act was a decision for purposes of the APA. Correct. But did not go further to say we compel the agency to commence removal proceedings so the status can be adjusted. Well, and then to that question, Your Honor, the regulation itself, 8 CFR 209.2F, provides the following. Quote, the agency, and I've already read it to you, but that notify the applicant who is seeking adjustment of status in writing of the decision on his or her application to which there is no appeal, but that USCIS will also notify the applicant of the right to renew the request in removal proceedings. In other words, the agency's own regulation contemplates that it will put the applicant into removal proceedings. This is an unusual case because obviously most people are not going to be complaining about the fact that they're not in removal proceedings. Right. But you have to ask the question, and this is what we try to raise below, is why would the government do this? Why would the government care? And the reason is because they know that perhaps they will lose before an immigration judge who will look at the grounds and say he's not removable, and that then puts them on the course to being able to apply for a green card and ultimately become a citizen. But on that continuum, what the government is doing is they're putting the brakes on the process by saying, we're not going to put you into removal proceedings, and once we do that, you will never have the opportunity to have an immigration judge review our decision. Counsel, may I ask? But you can stay. But you can stay. But you can stay. Okay. So, counsel, let me ask you. In Hosseini, the case was remanded to the district court for further proceedings. What happened on remand? Do you know? I believe that case was ultimately just resolved between the government and Hosseini. All right. Thank you, counsel. Thank you. May it please the court. Good morning. Good morning. My name is Timonique Peoples, and I'm here on behalf of the defendants' appellees. With me at counsel's table is Reed Allen from CIS. Plaintiff's complaint sought one sole remedy, and that's an order compelling CIS to place him in immigration proceedings so that he could renew his request for an adjustment of status before an IJ. The district court correctly dismissed the complaint on three bases. First, 1252G bars jurisdiction over such a request. Second, because 1252G bars relief, the APA also precludes relief. And third, the denial of discretionary relief cannot form the basis of a due process violation. The district court got it right. This court should affirm. First, Judge Gordon properly held that 1252G precludes jurisdiction to review CIS's determination not to commence removal proceedings. 1252G plainly provides that no court ---- Is there a determination to that effect? Yes, Your Honor. There's a decision, either the decision to commence or not commence. And here the agency has determined not to commence removal proceedings. So, yes, our view is that a decision has been made. Well, what triggers that determination? Well, simply they decided not to take action to commence proceedings. That's the decision. And, again, I know this is a very unusual, odd case. We certainly haven't uncovered one with a similar fact pattern because, as plaintiff's counsel correctly noted, not many aliens are looking to be placed in removal proceedings. But here the issue is there's a decision. The agency decided not to commence removal proceedings. And that decision is encompassed in 1252G. As Reno discussed, it really is ---- Just bear with me because this is so odd. So did he ask them to commence proceedings? Did he file a petition or something? I'm not aware of any petition that was filed. Well, I believe, if I remember correctly, during the transcript of the district court argument, I believe plaintiff's counsel asked that he did reach out to the agency to ask and that they emailed him back saying, no, they weren't going to. He can address that on rebuttal. I see. But there was no formal administrative proceeding. No, not to my knowledge, Your Honor. And, again, this is, like I said, an unusual situation. But Reno talks about at each stage the government having discretion to choose how to proceed. So it can proceed, decide to go forward, or it can altogether abandon the endeavor. And that's kind of what happened here. The agency denied the adjustment of status, decided, though, it would not move forward with initiating proceedings. That decision is squarely encompassed in 1252G. And two cases from this circuit are particularly instructive. And that's the Kitty Yee, Kitty Lease case, and that's the Jimenez Angeles case. And both of them talk about the decision whether and when to proceed or to initiate removed proceedings are encompassed by 1252G. So the district court got it right here. 1252G covers the situation. There's no jurisdiction because that's the only relief that plaintiff saw in the complaint. Counsel, what's your response to opposing counsel's reliance on the Hussaini case from the Sixth Circuit and the Pinot case from the Third Circuit? Plaintiff's counsel relies heavily on those cases to say or to argue that he has APA claim. Those cases only dealt with finality of an agency decision for purposes of an APA claim. And, again, that is reviewing adjustment of status. So both Pinot and Hussaini say that where removal proceedings are not pending, the denial of an adjustment of status is final agency action. That's not even an issue here because plaintiff is not seeking to review of the denial of adjustment of status. So Hussaini and Pinot really don't even apply here. I'm mystified as to just what do you think he is seeking to review, that e-mail? Well, he's seeking to review, as he stated when he was here, up here, he's only seeking to review the agency's decision not to commence removal proceedings. He's not seeking to challenge that tomorrow if they change their minds. But if something happens, they decide, well, you know, I think we're going to commence removal proceedings against the Ethiopians. Of course. The agency retains that discretion to decide whether and when it's going to initiate removal proceedings. But, again, Hussaini and Pinot, I just want to make this point, don't deal with this issue because the complaint solely seeks review of the agency's decision not to commence. I'm just trying to understand how we could have a final agency action that is reviewable under the APA if what you have is essentially an e-mail saying, well, we're not instituting these proceedings, but they could decide tomorrow that they were. If plaintiff's complaint were drafted differently and he actually did seek review of the adjustment of status decision or denial, then Hussaini and Pinot may come into play. They wouldn't apply, of course, but then they would be maybe relevant to this discussion, but they're not. What are the possibilities that the government and this particular Petitioner could work this out somehow that the government would entertain a petition for adjustment of status? Without all the convolution that is suggested here. Well, what plaintiff is asking for is, again, to force the government's hand, to force the government to do something that's decided it's not proper to do. Plaintiff still has an asylum status. It's not proper to do. Doesn't someone have a right? Obviously, there's an issue as to whether that has to be in a deportation proceedings or not. But on the merits, it would just seem to me that if a decision is made denying the adjustment of status, there ought to be a way to have that reviewed. Well, again, I just want to be clear. The complaint is not seeking review of that decision. Nowhere in the complaint does plaintiff ask for review. Isn't that what he wants to accomplish? Before an IJ. Before an IJ. But plaintiff has the asylee status. This INA precludes a person, while they have an asylee status, from being removed. So as long as he holds that status, he cannot be placed in removal proceedings. What would have to happen is plaintiff would have to concede somehow that his asylee status should be revoked. And then removal proceedings would have to be initiated. But it would have to be initiated by another component of DHS because. This just sounds to me like a catch-22. Why can't we get to the heart of the matter? Your Honor, the heart of the matter is simply that plaintiff has a protected status. He's an asylee. He's not being placed in removal proceedings. We understand that he's unhappy about the decision to deny him adjustment of status. But he can reapply. He's not in limbo. But when was he denied adjustment of status? He was denied in 2015. And could he have sought review of that? He could have. He could have sought to reopen, filed a motion to reopen the proceedings. He could have sought, filed a motion to reconsider the denial. He didn't do that. And certainly he may reapply. There's no limit on how many times he can apply. He can certainly reapply, prove that he warrants a favorable exercise of discretion, the circumstances have changed, and the decision may well change then. But he's not in limbo here. I mean, he does have avenues further he can take and further steps that he can take to maybe get adjustment of status. But on the facts before the agency, on the record before the agency, he didn't warrant adjustment of status at that time. And I hope I answered your questions, Your Honor's questions about Hossaini v. Pino. Yes. Okay. I also just want to address the district court's order that discretionary denial of relief cannot support a due process claim or even a mandamus claim for that matter. Neither of those issues were addressed in plaintiff's opening brief, so our position is that those arguments are waived. But in any event, they have no merit. As the district court concluded, a due process claim, both of what they're asking for is discretionary relief. And a due process claim requires a constitutionally protected liberty interest or property interest. Mandamus relief can only compel the performance of a clear nondiscretionary duty. And here plaintiff hasn't pointed to either one of those. So simply put, you can't force, you can't use mandamus to force the agency to take an action that's discretionary. And the denial of discretionary relief does not form a constitutional right. And unless the court has any other questions. It appears not. Thank you, counsel. Thank you. Rebuttal. Good morning, Your Honor. May it please the court. My name is Wayne Price on behalf of the Respondent. I need to clear up a couple of things that the government has told you, Your Honor. First of all, the first time he applied was not, tonight was 2015. He applied in 2006 to become a lawful permanent resident. He appealed it to the administrative of the AAO of USCIS. And then he got an attorney and applied again and has been denied again. The government keeps confusing adjustment of status under 1155 with adjustment of status for an asylee. And on page 26 and 27 of the excerpt from the record, they cite and emphasize this as nothing in this section, which is what happens when your adjustment of status is denied, nothing in this section entitles an asylee to proceedings under Section 240 of the Act, 240 Act being removal, who is not otherwise so entitled. That has nothing to do with an asylee's adjustment. An asylee is adjusted under 1159, and it says the provisions of this section shall be the sole and exclusive procedures for adjustment of status by an asylee, nothing to do with 245 whatsoever. But what is the procedure in your view? Well, Your Honor, there's only five things that are required. He applies, which he did several times. He's been physically present for one year, which he has. He continues to be a refugee. Nobody's claimed he hasn't. He has not been firmly resettled in any foreign country. He's never left the United States. And he is admissible to the United States. That's it. Well, so all of those were met. Were met, and it was presented to the agency, correct? It was presented to the agency. And you're not challenging the agency's decision on the merits of those? Well, of course we are. That's why we think they're completely wrong, and that's why we want a judge to review their decision. But you want it via removal proceedings, correct? Well, apparently that's the way to do it under their own regulation, Your Honor. Again, F, which is red, it's so clear and it's so different. That language in 245 about you have no right to be placed in a 240 proceedings is not in 209. It's not there at all. It says you will be notified of the right to review it. They did not notify him of that right, by the way, in their letter of denial. They left that out completely. But what is the avenue procedurally? I'm sorry, Your Honor? What is the avenue procedurally for you to get the review that you're seeking? To be placed into removal proceedings.  Okay. And, you know the other thing is that you have an absolute right to reapply right now. Your Honor, again, that's the cases that Mr. Appad did discuss with the Court. He has been applying for over 13 years. He's applied in 06. He appealed to the AAO. He applied again. He was denied in 15 or 16, 17, and we had no other choice but to file a claim. Well, as long as he's in this country, he should keep applying, should he not? No. Your Honor, it costs over $1,000 every time. He has an absolute right to adjust status according to the statute, to apply to adjust status, and either their decision is arbitrary and capricious because they're not adjusting his status under the APA, or he should be placed into removal proceedings because he's removable. Now, the government counsel is talking about we didn't raise the APA, we didn't raise mandamus. Of course not, because the only issue was 1252G. That's the only issue for this Court on appeal. And what, of course, we're requesting is that you remand because 1252G does nothing to deprive the district court of jurisdiction over this case. It's a final agency decision. If we remand, what is it that you are requesting that we remand for the district court to do? To consider our allegations under the APA violations and to ask the Court to consider whether or not the agency has an absolute requirement under their own regulations to place this man in proceedings. So bottom line, you want us to direct the district court to direct the agency to place him in removal proceedings. Your Honor, that would be nice, but we're not suggesting you're going to do that. What we are asking for is that the district court does have jurisdiction under the APA and mandamus. The only issue before this Court is does 1252G deprive the district court of jurisdiction? There's not one single case in this country that holds that, and the government has admitted that. Is there a single case in this country that holds that the district court has jurisdiction to compel the agency to commence removal proceedings? No, Your Honor, but we are. But the two cases that we cited under the Third and the Sixth Circuit provide that when an agency decision is final after so many years, the APA applies. All right. Thank you, counsel. Thank you to all counsel. The case just argued is submitted for decision by the Court. Thank you, Your Honor. Thank you. The final case on calendar for argument today is Apps versus Universal Music Company.
judges: Schroeder, O'scannlain, Rawlinson